May it please the Court, my name is Stephanie Adraktis, and I represent the petitioner Morris Nails. Mr. Nails was convicted of murder in a trial that was fundamentally unfair due to prosecutorial misconduct and ineffectiveness of his trial counsel. The only contested issue at trial was the identity of the person who shot and killed Robert Benjamin. Nails testified that he, like many others, was present at the scene, but that he was not the shooter. Can I ask you a question about your prosecutorial misconduct claim? You're not raising, as I see it, a confrontation clause claim. You're raising a prosecutorial misconduct claim. Why is that? That's correct, Your Honor, and that is how the issue was framed in the State court of appeal and in the district court petition. And my question, I guess, goes to this. The — let's assume for purposes of our discussion that the prosecutor's questions elicited information that shouldn't have been in the record, that it was testimonial hearsay. Why is that misconduct as opposed to just an evidentiary error? Because, Your Honor, the prosecutor repeatedly elicited that information, even though there were sustained objections. There were seven objections made during the course of that cross-examination. Three were sustained based on hearsay. He keeps rephrasing. And finally, the judge says, okay, now you're — now you've asked an appropriate question. I think the judge may have erred, but the judge says now you've asked an appropriate question, and he elicits the information. And when the objections are sustained, there's no response. And so I'm — I'm not sure it makes a big difference, but I was having some difficulty viewing this as prosecutorial misconduct. Not every mistake a prosecutor makes is misconduct, as opposed to a Confrontation Clause claim, which has some substance, I think. Yes, Your Honor. And I think that the Donnelly opinion does address the interaction between other — other rights of the defendant and prosecutorial misconduct. And what it tells us is that when a prosecutor's misconduct intrudes upon another right that's protected under the Bill of Rights, it's given special consideration. I think that's what we have here. We don't have just an ordinary evidentiary error that occurred in the course of a prosecutor doing something wrong. Back up. Why is it misconduct? I understand why — why it's reversible if it intrudes on constitutional rights. But why is this misconduct, as opposed to a mistaken but honest attempt to elicit information? There's two facets to it. One is that the prosecutor, as we well know from Crawford, must have known that it is not proper to bring before a jury a testimonial hearsay statement like, my brother committed this murder, when that person is unavailable as a witness to testify. He must have known that. And second, whether or not the objections were sustained properly, improperly, some were, some weren't, the prosecutor must have known that, and a practitioner of criminal law has to know that, you know, under the Supreme Court's decisions, testimonial hearsay is inadmissible, and you can't just bring up before a jury a statement like, this guy's the murderer, without bringing in the witness to be cross-examined. The second facet — Hearsay and evidence is admissible unless there's an objection. And there was an objection here, multiple objections — But all of them were overruled, though. Correct, Your Honor. And as — as been pointed out, probably wrongfully, I mean, this was clearly was hearsay. It appears to have been taken by a police officer in the course of a murder investigation and hence testimonial. I mean, it seems clear-cut that those statements shouldn't have been admitted as evidence. And so the second facet of the misconduct is the fact that the prosecutor repeatedly invoked the sibling relationship between Nails and the declarant as a reason why the jury should believe that Nails was guilty. But did he? I read his summation. Where in the summation does he repeatedly — In his rebuttal, Your Honor, as the court of appeal pointed out in the initial remarks, the prosecutor didn't talk about it. But then, when the defense had no opportunity to respond to what he said in his rebuttal, he said things like, logic, common sense, and our own human experience tell us that you would do anything within your power to help your brother. And he repeatedly invoked that. He suggested to the jury that if, because Nails had not brought his brother in to testify, a witness that the prosecutor well knew couldn't be brought in. Well, but that's a separate issue from the hearsay, isn't it? It is, Your Honor. Because as to that, I'm not so sure — well, first of all, you don't claim it as evidentiary error, but I'm not sure. Isn't it generally a rule that when a witness under your control is not called that a negative inference can be drawn? Your Honor, I cited to this Court's decision in Menendez on that point, which is, this Court has held in that case that when the evidence is within the defense's ability to bring before the court, then a prosecutor can make a fair comment about that in closing. But in this case, this prosecutor knew that Willie McNails had been subpoenaed and that he was not — Well, but the evidence also showed that when your client wanted Willie McNails to appear outside the jail, he appeared. I mean, so there was some evidence that he knew where his brother was and had the ability to make him show up. His brother was a witness to the events. He is somebody that he would have expected him to call otherwise. So I'm not — I'm not sure on that front, in the rebuttal, that he's really referring to the hearsay as much as he's referring to your client's failure to produce a favorable witness. But let me — if I can ask you to shift grounds for a second. What do we do with the findings of the State court that there was no — there was no Chapman prejudice? I mean, the State court says there's no prejudice under either of the applicable grounds. It cites the State court ground, put aside that for a second, but says you haven't — this is harmless under Chapman. Your Honor, the — Is that an unreasonable finding of law? That's exactly what I think Deck — this Court's opinion, Deck discusses the framing of the issue when a State court makes a finding that prosecutorial misconduct was harmless, then this Court is supposed to apply the Brecht standard and evaluate the entirety of the record to determine — Well, are we — or did the Supreme Court say the last time it slapped us down on this issue that we can — either standard works. If you apply — if you apply Chapman, that works. If you apply Brecht, that works. One subsumes the other. But you can't have Brecht error without Chapman, without — without an unreasonable Chapman finding. And that's essentially — I think Deck is consistent with that holding in the sense that they find that the prejudice analysis of the State court of appeal in that case was subsumed within the Brecht standard, which they found to be a more demanding standard in any of their — Right. If you do a Chapman or Brecht analysis, there's a lot of evidence in the record that points to his guilt. There is evidence, but it was recanted, and I think — Well, you can believe — you know, you can disbelieve a recantation. A juror can reasonably disbelieve a recantation. True, Your Honor, but when both witnesses are giving similar accounts of how they were treated by the police in the sense that they were threatened, that the police — Well, if you look at their recantations, they do look suspect. There are suspicious aspects to their — But why can't the jury just, you know, listen to that and say, we don't — you know, we believe their original statements? The jury could, but the issue in the — So why is that objectively unreasonable? That's what — to follow up on Judge Hurwitz's point. Yes, Your Honor. The unreasonableness lies in finding that those kinds of statements where the — where the witnesses came in to testify, I was lying, the police threatened me, was overwhelming evidence of guilt. That's not overwhelming evidence of guilt. It's possible for a jury to say, well, I believe the prior statement, but it's certainly not overwhelming when not one person came into court and said he's the killer. But the statements that they gave, that the two witnesses that you're talking about gave initially, I mean, was the — were the initial statements and were closer in time, seems like they may have had motivation to withdraw their statements, possibly. And so it's a credibility determination for the jury to make. But the details that were elicited and brought out in cross-examination based on their original statements seem rather compelling. Well, Your Honor, Brogan's initial statement was that he did not see any murder and that he had gone home after bullying at Castro Valley. So it was really his second statement that was presented to the jury. His original statement was, I didn't see any killing. And — But his second statement was full of — And his recantation doesn't really work, right? He recants things that even your client admits occurred. Just the incident, yes, Your Honor, where individuals got out of the car, threatened them with a gun. That's true. He says that never happened. And your client says that did happen. There are many inconsistencies. There are many unanswered questions here. The error lies in finding that on this record that was overwhelming evidence that Mr. Nails was guilty such that these — this misconduct did not influence the outcome, didn't have a substantial injury. Switch to the more demanding Brecht standard for a second. Does your — have you demonstrated actual prejudice? A substantial injury, you know, whatever the language of Brecht is? Yes, Your Honor, because the statement that Willie Mac Nails had accused his own brother of murder was harmful under any standard. The prosecutor repeatedly invoked their sibling relationship and argued to the jury that there's no way that Nails would not have brought his brother into court if he had actually seen something else and that, of course, Nails was guilty and the jury shouldn't believe his testimony because he didn't bring his brother in to testify. And under circumstances where there was no witness who testified at trial that Nails was the killer, that was over — that was a substantial and injurious harm. You're over your time, but I'll give you a minute for rebuttal. Thank you, Your Honor. Good morning, Your Honor. Sarah Turner on behalf of the Respondent. May it please the Court. In this case, appellant — two witnesses identified appellant as the shooter to the police. The prosecutor, when appellant testified on his own behalf, he said that other people are saying — are agreeing with him that he was not the person who shot. There were no other people who said that. Well, the other people were the ones who testified at trial. But the other people, but based on their statements to the police, yes. Right, right. But so his statement that other people agree with me was accurate. The two people who testified at trial agreed with him. They may not have been accurately testifying at that point. But whatever he said, how can you justify trying to introduce the brother's statement? Because he introduced it — when he said other people saying this, that's not accurate. Other people — now, aside from Brogan and Hunt. Do you think that opened the door to introduction of testimonial hearsay? I think that — I don't think it was used for the hearsay purpose. It was non-hearsay purposes, which is not a confrontation violation. Tell me what the judge's instruction — I tried to make sense of the judge's instruction. The admonishment as well as the instruction. You can't take this for the truth. You can just take it for its effect on the defendant. Yes. What does that mean? Because — The conduct of the defendant toward his brother. Well, okay. The jury already knew that Willie Mack was a prosecution witness. He was not available to testify at the preliminary hearing. He was subpoenaed. He did not appear. A warrant was issued for his arrest, and a fugitive task force could not locate  him. Now, witnesses for the prosecution at the preliminary hearing are only going to support the charges. So they already knew that much. When appellant testified, he said other people say I didn't do that. No one said he didn't do that. It seemed like he opened the door to the only other person that was with him. No. What did he say? Well, so you think you can get in testimonial hearsay because he says other people support my course of events. It's one thing to say, is your brother one of those other people? I think that's a perfectly good question. It seems like what he said. But it's a little different to say to him, do you know that your brother gave the police a statement saying that you did it? Isn't that — isn't that just pure testimonial hearsay? Well, you know, then we have to get the — I understand that's your position. I understand that's testimonial hearsay, isn't it? You don't disagree with that. Your brother says you did it, told the police you did it. Isn't that testimonial hearsay? Well, I think he asked him, did you read the statement. Right. But he keeps going. Yeah. He does keep going. He asks more questions, and there was one question, I think, that was not objected to. There was some reference to the reaction of the defender, how the defendant responded to that. That didn't make any sense to me. I mean, I don't understand, you know, the basis, and then to allow it over 25 times, that seems pretty significant. And, you know, the question we have to resolve here is whether or not it affected the decision of the California Court of Appeals in terms of whether it was unreasonable. But the — okay. The prosecution presented the evidence that, you know, it was the argument, appellant's argument, that he did not know Rose Hunt. What was the basis for referring to question it over 25 times? Well, it seemed that he wanted him to address where these other people are. Is this one of them? And it was not. And this is the only other person that was with him. We know that. It's one thing to say your brother was with you. Why isn't he here to support your position? I think that's a perfectly fair question. Well, and those questions were posed. Isn't he not here? One of the reasons you haven't tried to find him is because you know he wouldn't support your position. I think that's okay, too. But it's quite different to say, and do you know he gave a statement to the police with the following information in it? That's, I think, way across the line. So I don't — you know, I had a hard time. If this were a case about — if this were a direct appeal about hearsay, you'd  My question is a different one. Yeah. Which is, given the whole context of this trial, we're looking at a California determination that it was harmless error. Yes, it was. Why is that a reasonable determination given it's a two-witness trial, three-witness trial, two people get on and say he didn't do it, but they have prior statements that said he did? He gets on and says I didn't do it. Because the statements of the witnesses were extremely credible. They were given right there at the scene of the crime by one of them who knew him. And the second one, the young man's father brought him down to court, and that brought him down to the police station. So those statements outweigh the highly prejudicial evidence that came in regarding the statements of Willie Mack? Well, I mean, I don't necessarily — I'd say it was incriminating, which is what the state court said, but I don't know that it was highly prejudicial under these circumstances. Prejudicial? You don't think they were prejudicial? No. I don't. You think that the prosecutor — You have to weigh it against the other evidence. Exactly. But surely, as your opponent says, it's harmful to his case to hear that his brother identified him as the killer. You must admit that. Well, we sort of already knew that. I mean — Well, no, you don't already know that. All you know is that his brother isn't showing up. So you can draw an inference that his brother may not be a good witness for him, but it's quite different to say that his brother also told the police that he did it. That's a — that's very different than the negative inference you might draw from his absence, isn't it? No. No. And I only go back to the fact that he has said, other people said I didn't do it. No one said that.  Well, and again, maybe we're going over the same ground here. Yeah. But I don't — I think it would be perfectly fine to say, other people say you didn't do it. Was your brother among those other people? I think that's perfectly okay to ask. And if he says, yes, my brother says I didn't do it, then I suppose you can bring in the statement. But — I mean, it seems like the prosecutor took a sledgehammer to fix this — to address this problem. And was the sledgehammer too much, I mean, in terms of the impact here? It does look like the witnesses recanted and gave statements about recanting. So it's not like they were full-on statements. And to balance that versus the — whether you agree to that or not, the prejudicial nature of the impeachment of the defendant through his brother's actual statements to the police, incriminating him, seems rather extraordinary. It's a little troubling that you don't acknowledge some issue with that based on the fact that the prosecutor asked that over 25 times. Well, I do agree it was incriminating, but I'm not sure there was prejudice from it, is how I argue it. You don't think there was a problem with it? I think it was incriminating, and I do agree that there probably could have been an objection made. But at one point, which I think we're pointing out, but when I think with — Would you encourage the prosecutor to do it all over again? No, I probably wouldn't. Thank you. But I also think that the trial court was taking very good care to make sure that it was admonishing the jury that this was not for the truth of the matter, for what it was stated. Can you address the issue I asked your opponent about? This habeas isn't a Confrontation Clause habeas. It's a prosecutorial misconduct habeas. What — on the merits of the case, what does that mean? What more has to be shown to show prosecutorial misconduct than simply introduction of evidence that shouldn't have been introduced? That there was prejudice. Well, that — wouldn't there have to be a showing of fundamental unfairness? Well, for the, you know — For the violation. For the violation. But you process violations, so you'd have to show a fundamental unfairness in the trial. But he did not — he did not receive a fair trial.  In light of that prosecutor's questioning. No, go ahead. No, I guess I'm moving backwards, too. Judge Paz is quite correct on that. My question is, is it prosecutorial misconduct simply to introduce an admissible evidence, or is more required to establish the misconduct, even before we get to the question of whether the trial has been rendered fundamentally unfair? I would — I would say that there would have to be prejudice. Well, no. Perhaps I'm not arguing correctly. That's the second part of it. So if the judge had said, don't you raise that question again. Yeah. And the lawyer went ahead and continued to ask the question, as Judge Murgia points out, that would be prosecutorial misconduct, wouldn't it? Well, I think, yeah. I mean, if he sustained the objection and then he continued to ask the same question. Here, I guess, and I'm not — I don't know the answer. It may be helpful to your side. But the — the judge sustains some objections, but he rephrases. And the judge then later says, no, I'll allow that. Yeah. And I'm having some difficulty in my own mind seeing how counsel commits misconduct, even if he — even if he and both the judge are wrong, in following the judge's instructions and rephrasing it in a way that the judge then gives this limiting instruction, which I'm not sure makes any sense, but at least in the mind of the court, I think the court appeared to have in mind that it was making the, you know, admonishment and was trying to allow some of the evidence in that there was not other witnesses who said you did not do it. So. Okay. Judith. No. I just — you know, all these points that are being made make this a very challenging case for Mr. Nails. Yeah. And I would not want the government to walk away thinking that this was the way to handle this issue. I understand, Your Honor. Thank you. I said I'd give Petitioner's counsel a brief rebuttal. Thank you, Your Honor. As to the strengths of the State's case, there were several natural prosecution witnesses who also did not appear at trial, and that should weigh in the analysis against the government's argument. Arianna Alberti, Sheretta Henderson, who was Benjamin's cousin, were right there, cooperated with the police. Did the police try to track them down? Nor Lena Davis as well. It's unclear. There's some testimony in the record that it did. And it's unclear that the attorney didn't do what they could based on the record to try to get them there. It is unclear. However, because those initially cooperating witnesses, neither of who identified Mr. Nailson, who were probably the people he was referring to when he said other people said I didn't do it, they didn't testify for the government. And that should weigh against the strengths of the State's case. Here, what the government is trying to do is say that the verdict can rest on the credibility of people that they're also saying lied under oath at the trial. And it just, I would submit, doesn't make sense in that analysis to hold that there was overwhelming evidence under those circumstances. Thank you. We appreciate your arguments this morning, and the matter is submitted.
judges: Paez, Murguia, Hurwitz